J-S34002-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ADAM CHRISTOPHER HARDIN | : | |
| | : | |
| Appellant | : | No. 240 WDA 2018 |

Appeal from the PCRA Order January 9, 2018
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0002586-2013

BEFORE:   BOWES, J., STABILE, J., and STRASSBURGER*, J.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 22, 2018**

Adam Christopher Hardin appeals *pro se* from the PCRA court order entered on January 9, 2018.  As this appeal is procedurally defective, we quash.

On October 22, 2015, a jury convicted Appellant of tampering with a public water system, weapons of mass destruction, terroristic threats, and two counts each of unlawful use of computer and criminal use of a communication facility.  The convictions stem from a series of threats that Appellant leveled against the residents of Blair County, Pennsylvania, during the fall of 2013.  Specifically, on October 23, 2013, Appellant sent emails to reporters affiliated with the Altoona Mirror and the WTAJ television station indicating that a bomb was hidden at the Blair County Courthouse that was set to detonate "upon a certain case."  N.T., 8/12/15, at 36, 41, 46.  Two days later, Appellant sent

_____

* Retired Senior Judge assigned to the Superior Court.

another email to the Altoona Mirror that stated: (1) his earlier bomb threat was a hoax; (2) the reservoirs and facilities that service the Hollidaysburg water supply had been contaminated with toxins; and (3) three additional bombs had been placed around Hollidaysburg. That email read,

> The Plan [Nine Reservoir], the Muleshoe [Reservoir], as well as the [Altoona Water Authority] transmission system has [sic] been contaminated with a form of toxin that cannot be filtered by conventional means[,] the affects [sic] of which will not be seen for five to nine days after consumption. As for the bomb [threat,] that was a test to see the response action. Now there are three other bombs distribute[d] through Hollidaysburg that will go off upon a random number generator.

*Id*. at 47-48. An investigation traced the emails to Appellant, an inmate at the Blair County prison, who transmitted the threats from a computer in the prison law library.

On November 30, 2015, the trial court imposed an aggregate term of thirty-two to ninety-six months imprisonment. The sentence was imposed consecutive to a forty-to-eighty-month term of imprisonment issued on the same date by a different trial court in an unrelated case. As it relates to this appeal, Appellant was ordered to pay $2,000 in fines and $29,311.74 in restitution. Appellant's judgment of sentence became final on August 16, 2016, when this Court granted his request to discontinue the ensuing direct appeal. *See Commonwealth v. Conway*, 706 A.2d 1243 (Pa.Super. 1997) (judgment of sentence became final when direct appeal was discontinued at defendant's request).

On April 10, 2017, Appellant timely filed a PCRA petition. The *pro se* petition alleged trial counsel's ineffectiveness for failing to present video or testimonial evidence to demonstrate that he was not in the prison library when the threatening emails were sent. However, appointed counsel subsequently informed the PCRA court that Appellant wanted to withdraw the PCRA petition. After an on-the-record colloquy, the PCRA court confirmed that Appellant's decision to discontinue the PCRA proceeding was knowing, intelligent, and voluntary. On January 9, 2018, the PCRA court granted Appellant's request to withdraw his petition. Significantly, in granting Appellant's request to withdraw the PCRA petition, the court also approved Appellant's entreaty to suspend the repayment of fines and restitution while he is incarcerated, *i.e.*, at least three years. However, apparently experiencing regrets about his decision to discontinue the PCRA petition, Appellant timely filed the instant *pro se* appeal from the January 9, 2018 order granting his request for relief.[1]

---

[1] Prior to filing the notice of appeal, Appellant filed a *pro se* motion to discharge all counsel because they provided ineffective assistance during the jury trial. As Appellant previously withdrew the PCRA petition, the PCRA court accurately noted that nothing was currently pending before it, and denied the motion to discharge counsel as moot.

Additionally, we observe that the postmark attached to Appellant's notice of appeal is dated February 5, 2018. Pursuant to the prisoner mailbox rule, which provides that a document is considered filed on the date it was delivered to prison authorities for mailing, we consider the petition to have been filed that date. *See Commonwealth v. Chambers*, 35 A.3d 34, 38-39 (Pa.Super. 2011); *Commonwealth v. Castro*, 766 A.2d 1283, 1287 (Pa.Super. 2001).

Appellant complied with the PCRA court's order to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), wherein he re-asserted trial counsel's ineffectiveness, added new claims of ineffective assistance, and asserted a novel challenge to the trial court's jury instructions. The trial court issued a Rule 1925(a) opinion that determined that all of Appellant's issues were waived, in part, because Appellant had withdrawn his timely PCRA petition.

On appeal, Appellant presents seven issues for our review, none of which relates to the January 9, 2018 order granting his request for relief.[2]

_____

[2] Functionally, there is no determination to appeal. By electing to discontinue the PCRA proceeding, Appellant rendered his April 10, 2017 PCRA petition a legal nullity. Nevertheless, ignoring this reality, Appellant levels the following arguments that challenge trial counsel's representation, his convictions, and the judgment of sentence:

> 1) Was counsel ineffective for not obtain[ing] Blair County jail footage, that clearly established that Appellant was not in the law library at th[e] time that a threat was made against the public water system?
>
> 2) Was counsel ineffective for not receiving a deposition from the prison guard (C.O. Alger), who's [sic] testimony . . . would have [provided] an alibi and exonerated [Appellant] of all but 2 charges[?]
>
> 3) Was counsel ineffective for not asking Judge Sullivan to recuse himself, due to the fact that Judge Sullivan previously represented me as my [a]ttorney in youth proceedings?
>
> 4) Was the Appellant improperly charged, in that Appellant was incarcerated and unable to leave a secure facility and the

At the outset we must determine whether the appeal is properly before this Court. A fundamental component of the determination concerning whether an order is final and appealable relates to its effect on the aggrieved party. ***State Farm Fire and Cas. Co. v. Craley***. 675 A.2 732 (Pa.Super. 1996) (quoting ***Maleski v. Mutual Fire Ins.***, 633 A.2d 1143, 1145 (Pa. 1993) ("A pivotal consideration in determining whether an order is final and appealable, is whether the plaintiff aggrieved by it has, for purposes of the particular action, been put 'out of court' on all theories of recovery asserted against a given defendant for a given loss.")). In this vein, Pennsylvania Rule

---

Appellant had a witness and camera footage that clearly show that Appellant could not have made that threat at that time?

5) Was Appellant entitled to time credit from the date of arrest (while incarcerated) of 11-13-13 to 11-30-15, after the dismissal of previously charged offense?

6) Was counsel ineffective for not requesting that all these related offense[s] merge (which occurred while the Appellant was incarcerated), which were consolidated, and not merged for sentencing purposes, all other related offenses were sentenced consecutive?

7) Was it possible for Appellant to tamper with the public water system while Appellant was in fact incarcerated?

Appellant's brief at 2-3. Unfortunately for Appellant, these claims are not currently before this Court. Instantly, the only issue before us relates to the January 2018 order granting Appellant's request to withdraw the PCRA petition. To the extent that Appellant regrets his decision and desires to pursue post-conviction collateral relief, his course is to file a PCRA petition that is subject to the statutory timeliness requirements. We will not address the merits of his substantive complaints at this juncture.

of Appellate Procedure 501 provides, "Except where the right of appeal is enlarged by statute, any party who is aggrieved by an appealable order, or a fiduciary whose estate of trust is so aggrieved, may appeal therefrom." Pa.R.A.P. 501.

An aggrieved party is one who "[has] been adversely affected by the decision from which the appeal is taken." **Green v SEPTA**, 551 A.2d 578, 579 (Pa.Super. 1998); **see also Commonwealth v. Fitzpatrick**, 159 A.3d 562, 572 (Pa.Super. 2017). In contrast, a prevailing party is not aggrieved insofar as there is no adverse action from which to invoke appellate relief. **Commonwealth v. Dellisanti**, 831 A.2d 1159 (Pa.Super. 2003) (*en banc*), *rev'd on other grounds*, 876 A.2d 366 (Pa. 2005). Thus, a prevailing party "does not have standing to appeal an order that has been entered in his or her favor." **Green**, **supra** at 579.

In **Fitzpatrick**, **supra**, this Court quashed a defendant's cross-appeal from an order granting judgment of acquittal because he was not an aggrieved party. A jury convicted Fitzpatrick of first-degree murder, and the court imposed life imprisonment. Fitzpatrick filed post-sentence motions challenging the weight and sufficiency of the evidence. Following the submission of briefs and oral argument, the trial court granted the motion in part. As the **Fitzpatrick** Court explained, "Specifically, the trial court denied [Fitzpatrick's] request for a new trial, but granted [his] motion for judgment of acquittal based on the Commonwealth's failure to present sufficient

- 6 -

evidence to sustain a first-degree murder conviction." *Id*. at 566. The Commonwealth appealed, and Fitzpatrick filed a cross-appeal.

In quashing Fitzpatrick's cross-appeal, this Court invoked the above-referenced legal principles and concluded that, since Fitzpatrick prevailed below, he was not an aggrieved party. Specifically, we reasoned, "even though the trial court did not grant [Fitzpatrick's] request for a new trial, we fail to see how [he] was aggrieved by the order granting his request for judgment of acquittal so as to endow him with standing to file the instant cross-appeal." *Id*. at 572.

Similar to the status of the cross-appellant in *Fitzpatrick*, Appellant was not adversely affected by the order from which the instant appeal was taken. As discussed *supra*, the PCRA court granted Appellant's entreaty to discontinue the PCRA proceedings and it stayed the repayment of restitution pending Appellant's release from incarceration. Since the PCRA court **granted** Appellant's specific requests for relief, Appellant is not an aggrieved party, and the instant appeal is improper. *Fitzpatrick*, *supra*, (noting "only an aggrieved party can appeal from an order entered by the lower court.").

Appeal quashed.

Judgment Entered.

_____

- 7 -

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/22/2018